UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                               Plaintiff,

                                                                                  <u>DECISION AND ORDER</u>

                                                                                  03-CR-6142L

                               V.

EDMUND GUADALUPE, a/k/a
Cuchalin, a/k/a Cuch, JOSE ALBARRAN,
et al.,

                               Defendants.
_____

       By decision entered July 22, 2005 (Dkt. #248), United States Magistrate Judge Jonathan W. Feldman issued a decision and order disqualifying John R. Parrinello ("Parrinello") or any member of his firm ("the Parrinello firm") from representing defendant Jose Albarran ("Albarran") in this case. Familiarity with that decision and order is assumed.

       Parrinello appealed from that decision to this Court. Both Parrinello and the Government have filed papers on the appeal, and the matter was argued before this Court on October 27, 2005.

       Magistrate Judge Feldman granted the Government's motion to disqualify the Parrinello firm pursuant to the ethical considerations of New York Disciplinary Rule 5-108, which provides in part that "a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure ... [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."

Under Second Circuit authority, disqualification under this rule is appropriate if three conditions exist, the first two of which clearly are present here.[1] In this case there is no doubt that Edmund Guadalupe ("Guadalupe") was previously represented by the Parrinello firm for many months, and it is equally clear that there is a "substantial relationship" between Parrinello's prior representation of Guadalupe and his representation of defendant Albarran. This is more than involvement in a related case. It is the exact same case and indictment. *See Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 572 (2d Cir. 1973) (disqualification required where "there are matters in controversy in each case ... that are not merely 'substantially related,' but are in fact identical").

The principal issue is whether the third prong of the test has been met, *i.e.*, whether Parrinello "had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of" Guadalupe. *United States v. DiTommaso*, 817 F.2d 201, 219 (2d Cir. 1987). In his papers on appeal to me and at oral argument, Parrinello has asserted that he had no such privileged information or communications with Guadalupe. Parrinello has stated that he "ha[s] not talked to Mr. Guadalupe." Dkt. #258 ¶ 23. He states that although the Parrinello firm has represented Guadalupe since 2003, "[t]he representation of Mr. Guadalupe was mainly the responsibility" of two other members of the firm, John Parrinello's son, Matthew Parrinello ("Matthew Parrinello"), and Bruce Freeman. Parrinello contends that not only have neither Matthew Parrinello nor Freeman ever transmitted any confidential information about Guadalupe to Parrinello, but that based on Parrinello's conversations with Matthew Parrinello and Freeman, Guadalupe has never provided any confidential information to them either. Dkt. #225 ¶ 27; #258 ¶ 103.

---

[1] In this circuit, an attorney may be disqualified from representing a client in a particular case if
(1) the moving party is a former client of the adverse party's counsel;
(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues of the present law suit; and
(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*United States v. DiTommaso*, 817 F.2d 201, 219 (2d Cir. 1987) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

In addition, both John and Matthew Parrinello have stated in an unsworn declaration dated April 29, 2004 that "[a]t no time has JRP [*i.e.*, John Parrinello] had any contact with the Guadalupe file or J. Matthew [Parrinello] or Bruce F. Freeman, Esq. in which JRP has acquired any knowledge of a substantive or even procedural nature regarding Mr. Guadalupe." Dkt. #68 at 4.[2] They also stated that John Parrinello represented Albarran, that Matthew represented Guadalupe, and that "no attorney client communication will be shared" between them. *Id.* at 5.

Parrinello suggests that the rule, DR 5-108, does not mandate disqualification under all circumstances in which an attorney, or another attorney from the same firm, previously represented a government witness. Rather, he contends that although there may be a presumption of access to confidential information, it is a rebuttable one and that by dint of his submissions to the Court, Parrinello has rebutted the presumption.

There are certainly a number of factors weighing in favor of disqualification here. For one thing, this certainly is not a case where there was only a momentary or fleeting representation. In fact, the record here indicates that Parrinello and his firm represented the former client (Guadalupe) for eight months, from October 2003 to June 2004. The representation was also an active one: a detention hearing was litigated, motions were filed, and a suppression hearing was held. Although Parrinello contends that the motions filed on Guadalupe's behalf were little more than boilerplate and were not based on any confidential information provided by Guadalupe, *see* Dkt. #258 ¶¶ 7-12, it seems unlikely that Guadalupe would not have had *some* discussions with his then-counsel in the Parrinello firm about the case. *See Perillo v. Johnson*, 205 F.3d 775, 799 (5th Cir. 2000) (noting that "good criminal practice would have required that [the attorney] discuss the facts of the case, at least to some extent, with [his client]").

Indeed, there is some indication in the record that Guadalupe *did* have some discussions with Matthew Parrinello about the case. At a detention hearing on October 6, 2003, at which Matthew

---

[2]This declaration was filed in response to the Government's Motion for Inquiry into Potential Conflicts of Interest (Dkt. #52), which stemmed from the Parrinello firm's joint representation of Guadalupe and Albarran.

Parrinello appeared on behalf of Guadalupe, Matthew Parrinello requested "a five day adjournment so I can discuss this [*i.e.*, the Government's proffer] and prepare a rebuttal." Dkt. #237-3 at 21. He added that he intended "to use Friday [the hearing took place on a Monday] and this weekend to go in and discuss with Mr. Guadalupe the circumstances surrounding the hearing ... ." *Id.* at 24-25.

In addition, on February 3, 2004, Guadalupe filed an affidavit which was intended to establish his standing to seek to suppress physical evidence, specifically a weapon that had been seized by police from a hotel room that Guadalupe had stayed at in May 2003. Dkt. #16. The affidavit was notarized by Matthew Parrinello. Presumably, the affidavit was drafted by Matthew Parrinello, based on information provided to him by Guadalupe. A suppression hearing on Guadalupe's motion was held on February 9 and 18, 2004, at which Guadalupe was represented by Matthew Parrinello.

Under these circumstances, there is a presumption that Guadalupe divulged confidential, privileged information to his attorneys. *See Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) ("Once the substantial relationship [between the subject matter of the prior and current representations] is established, the court need not inquire whether the attorney in fact received confidential information, because the receipt of such information will be presumed"); *Miroglio, S.p.A. v. Morgan Fabrics Corp.*, 340 F.Supp.2d 510, 512 (S.D.N.Y. 2004) ("the issue remains that of access rather than the content of confidential communications"). Likewise, there is a presumption that John Parrinello had access to that information. *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) ("An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences"); *Edwards v. Gould Paper Corp. Long Term Disability Plan*, 352 F.Supp.2d 376, 381 (E.D.N.Y. 2005) ("It is well settled that the knowledge of a single attorney within a firm is to be imputed to the entire firm"). Furthermore, the Second Circuit has stated that "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *see also LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir.1983) ("A very strict standard of proof must

be applied to the rebuttal of this presumption, however; and any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification").

On the other hand, there is also authority that the presumption bar should not be raised to such an extent that no one could rebut it. The Second Circuit has observed that "[i]t will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975) (quoting *Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955)).

Here, we have a well-respected attorney averring that he received no confidential communications from his client, either directly or through other members of Parrinello's firm. The Government suggests that Parrinello's statements to that effect do not rebut the presumption, and that to hold otherwise would require the Court and the former client to get into the nature, extent and subject matter of the conversations between counsel and former client. In that regard, the Second Circuit has recognized that "[i]t is well established that a court may not inquire into the nature of the confidences alleged to have been revealed to the tainted attorney. To require proof of access to privileged information would 'put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether.'" *Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir. 1980) (quoting *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978)), *vacated on other grounds*, 450 U.S. 903 (1981).

That does not mean, however, that *nothing* should ever be required of a former client when an attorney has positively stated that he has never received any confidential communications from the former client. The presumption of access is, after all, a rebuttable one, and it is difficult to see what more an attorney could do to rebut the presumption other than state that no confidences were ever received from the former client. *See Cromley v. Board of Educ. of Lockport Twp. High Sch.*

*Dist.*, 17 F.3d 1059, 1065 ("Uncontroverted affidavits are sufficient rebuttal evidence"); *see also Silver Chrysler Plymouth*, 518 F.2d at 757 (noting that attorney "denied having been entrusted with any such confidences" and that "[h]e was supported in this respect by the affidavits of [two other attorneys with whom he had worked]. This was sufficient" to rebut the inference that he possessed confidences that could be used against his former client).[3]

It does seem that, except for the fact that there was a long-term relationship between the Parrinello firm and Guadalupe involving significant legal matters, there is nothing to contradict Parrinello's statement that he never in fact received any confidential communications from Guadalupe. Guadalupe's current lawyer, Gary Muldoon, Esq., has stated in two letters to the Court that "[i]t is [his] position that a 'Chinese wall' (or 'firewall') was not in place at the [Parrinello] law firm, and cannot exist in a small law firm ...," Dkt. # 228 at 2, and that "[g]iven the [Parrinello firm's] representation [of Guadalupe] for eight months, ... the assertion by the Parrinello law firm that no confidences were shared is risible." Dkt. #241 at 2. An attorney's argument, though, cannot in itself overcome Parrinello's positive statement that he never received any confidential information from Guadalupe.

I believe, therefore, that the record needs to be amplified. The Court needs some information from Guadalupe relative to whether he had confidential conversations, or discussions about the case, with anyone at the Parrinello law firm. I am sensitive to the need to avoid forcing Guadalupe to disclose to the Court the exact nature of any privileged information that he had provided to his former counsel, and I do not expect Guadalupe to do so. To enable the Court to make an informed decision about whether to disqualify the Parrinello firm, however, I must have more information than is now before me.

---

[3]Parrinello's submissions concerning the disqualification issue are captioned "certifications" rather than affidavits, and are not notarized. In them, Parrinello expressly certifies that the statements contained in those documents are true, however, and recognizes that he is "subject to punishment" if he willfully made any false statements. The Court therefore treats these documents as equivalent to affidavits.

Accordingly, Guadalupe is directed to file with the Court an affidavit setting forth: (1) whether he has had any conversations or other communication with, or provided any information to, any member of the Parrinello firm relating to this case; and (2) the dates (or approximate dates) of any such conversations or communications, and the general subject matter to which the conversations related. Guadalupe should also indicate which particular individuals at the Parrinello firm he had such contacts with. Again, Guadalupe is not required to set forth the actual content or subject matter of such communications, other than the fact that they related to the facts involved in this case.

## CONCLUSION

Defendant Edmund Guadalupe is hereby ordered to submit to the Court an affidavit, as set forth in the body of this Decision and Order, within ten (10) days of the date of issuance of this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 16, 2005.